**E-FILED**
Friday, 07 November, 2008  03:34:19 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES  DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**Urbana Division**

| | |
|---|---|
| DEBORAH J. FAIRLEY, ) | |
|         **Plaintiff,** ) | |
|   **v.** ) | |
| ) | |
| **MICHAEL J. ASTRUE,** ) | **Case No. 07-2203** |
| **COMMISSIONER OF SOCIAL** ) | |
| **SECURITY,** ) | |
|         **Defendant.** ) | |

# REPORT AND RECOMMENDATION

In April 2007, Administrative Law Judge (hereinafter "ALJ") John Wood denied supplemental security income benefits to Plaintiff Deborah Fairley.  The ALJ based his decision on findings that Plaintiff was not disabled within the meaning of the Social Security Act and she was capable of performing a significant number of jobs available in the national economy.

In November 2007, Plaintiff filed a Complaint for Judicial Review (#4) against Defendant Michael Astrue, the Commissioner of Social Security, seeking judicial review of the final decision by the Regional Commissioner of the Social Security Administration denying benefits.  In May 2008, Plaintiff filed a Motion for Summary Judgment or Remand (#12) and in July 2008, Defendant filed a Motion for an Order Which Affirms the Commissioner's Decision (#18).  In September 2008, Plaintiff filed a Reply to Defendant's Memorandum in Support of Motion for Summary Affirmance (#20).  After reviewing the administrative record and the parties' memoranda, this Court recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B), that Plaintiff's Motion for Summary Judgment or Remand **(#12)** be **DENIED**.

## I.  Background

### A.  Procedural Background

Plaintiff applied for benefits in November 2005, alleging disability beginning November 2005 due to high blood pressure, lower back pain, and right knee and arm problems.

(R. 25.)  The Social Security Administration denied her application initially and upon reconsideration.  She appealed and ALJ Wood held a hearing in January 2007, at which Plaintiff and Dr. James Lanier, a vocational expert (hereinafter "VE") testified.  An attorney represented Plaintiff at the hearing.  In April 2007, ALJ Wood denied Plaintiff's application for benefits based on findings that Plaintiff was not disabled within the meaning of the Social Security Act and she was capable of performing a significant number of jobs that exist in the national economy.  In April 2007, the Appeals Council denied Plaintiff's request for review and Plaintiff subsequently appealed the decision to this Court.

### B.  Plaintiff's Medical Background

Both parties described Plaintiff's medical background in detail.  The Court will not repeat it here.

### C.  Testimony at the Hearing

At the hearing, Plaintiff testified that she was 47 years old.  She weighed 235 pounds and was 5 feet 6 inches tall.  She has a high school diploma.  She is a widow and she lives with her four grandchildren, who are 8 years old, 5 years old, 3 years old, and 22 months old.  The two older children have lived with her since they were born.  Plaintiff has been a foster parent for the two younger children for a year.  Plaintiff's husband died in March 2006 and, since that time, she has been taking care of the children by herself.  Plaintiff lives in a one-level home.  There are two steps to get in the front door and two steps to the garage.  (R. 289-92.)

Plaintiff drove to the hearing.  She testified that she cannot drive for long periods of time; she tries to limit her driving to about 10 or 15 minutes.  (R. 291.)

Plaintiff testified that she did not think she would be able to work full-time outside the home because her knees are bad.  She has problems even taking care of her grandchildren.  Her left knee is especially painful.  (R. 292-95.)  She testified that she can stand for a maximum of 30 minutes before her knees really bother her and she has to sit down.  She can sit for about

**2**

15 or 20 minutes before she has to get up.  (R. 295.)  Her right elbow and shoulder bother her.
Sometimes she has trouble reaching over her head and sometimes she has problems picking up
her granddaughter, who weighs about 20 pounds.  (R. 296-97.)  Plaintiff does not carry her
granddaughter.  (R. 298).  Her husband was disabled, but before he died, he helped with the
children and household chores as well as he could.  As far as his own care, he was independent.
(R. 309-10.)

Plaintiff experienced some side effects from medication because of allergies, but she no
longer takes those medications.  She does not have side effects from medications that she is
taking now.  (R. 292-94.)

Plaintiff testified that taking care of four children is like having a job.  (R. 292.)  On an
average day, she will get up around 6:30 a.m. and get the three older children ready for school.
The baby usually wakes up around that time, too.  The oldest child gets dressed on his own, but
Plaintiff helps the two middle children.  After the children have left for school, Plaintiff dresses
and feeds the baby.  (R. 298-300.)  After that, the baby "usually runs around the house," and
Plaintiff more or less runs around behind her to watch her.  (R. 300.)  The 3-year-old and 5-year-
old get home from school around 11:30.  Plaintiff feeds them lunch and all three of the children
take a nap around 12:30 until about 3:30 when the 8-year-old gets home.  While they are
napping, Plaintiff does housework, including cooking, cleaning, and laundry.  Plaintiff also takes
the garbage out and does the grocery shopping.  (R. 301-02.)  The children's mother is
sometimes there to help.  The children visit their mother at the mother's home once a week; the
visits are supervised by one of the supervisor aides.  (R. 302-03.)

Plaintiff testified that weekends are "crazy" because all the children are home all the
time.  (R. 303.)  The children get up no later than 8:30 a.m. and take a nap beginning between
12:00 and 1:00 p.m.  Sometimes the 8-year-old helps out on weekends.  The children are not
involved in school or park district activities, so they generally stay at home.  In the summertime,
Plaintiff may take them to the park.  (R. 303-04.)  Plaintiff attends school conferences for the

children, but does not attend other school functions.  (R. 305.)  Plaintiff does not mow the grass and does not usually shovel snow.  She does not belong to clubs or organizations or attend church.  She and the children visit her mother in a nursing home once or twice a week.  Sometimes people come to visit Plaintiff.   When Plaintiff goes shopping, she brings the children.  (R. 306-08.)

Plaintiff worked as a cook in the past.  The ALJ questioned the VE, asking whether an individual with Plaintiff's past relevant work as cook, with exertional capacity limited to light work with no pushing or pulling with the lower extremities, only occasional overhead reaching with her right arm, no climbing of ladders, ropes, or scaffolds, and only occasional (one-third of the time) other postural functions could perform Plaintiff's past work.  The VE testified that such an individual would be unable to perform Plaintiff's past work.  (R. 312.)

The ALJ modified the hypothetical question by adding vocational factors of Plaintiff's age, education, and work history.  The VE testified that such a person could perform jobs available in the national and/or regional (Illinois) economy, including the following unskilled light and sedentary jobs:  ticket checker, interviewer, order clerk, information clerk, messenger, and others.  (R. 313.)  The VE testified that limiting the hypothetical individual to sedentary work would eliminate the light jobs, but there would still be a number of sedentary jobs that the individual could perform.  Limiting the hypothetical individual to performing other postural limitations (such as crouching, crawling, stooping, and kneeling) only 10 percent of the time would not affect the number of jobs that the individual could perform.  Limiting the hypothetical individual to avoid environmental hazards such as unprotected heights and dangerous machinery would not affect the number of jobs.  An employer would typically tolerate about two absences a month.  (R. 314.)

### D.  The ALJ's Decision

To be entitled to social security disability benefits, a plaintiff must show that he is unable to engage in any substantial gainful activity because of a medically determinable physical or

mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of at least twelve months.  42 U.S.C. § 416(i)(1).  To determine disability, the Commissioner uses a five-step sequential evaluation.  He determines:  (1) whether the claimant is presently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, that is, one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to perform his past relevant work; and (5) if the claimant cannot perform the past work, whether the claimant can do other jobs that are available in the national economy.  Between steps three and four, the ALJ determines the claimant's residual functional capacity, that is, the work he is still able to perform despite limitations.  20 C.F.R. § 404.1545.  The claimant bears the burden of production and persuasion at steps one through four.  Once the claimant shows he is unable to perform past work, the burden shifts to the Commissioner to show that the claimant is able to engage in some other type of substantial gainful employment. *Campbell v. Shalala*, 988 F.2d 741, 743 (7th Cir. 1993).

The ALJ's decision followed this five-step process.  At the first step, the ALJ found that Plaintiff has not been engaged in substantial gainful activity since the onset of disability.  At the second step, the ALJ determined that the record showed that Plaintiff had severe impairments including bilateral degenerative knee disorder and a partially torn rotator cuff of the right shoulder.  (R. 13.)  At the third step, the ALJ determined that Plaintiff's condition did not meet or medically equal any of the impairments listed in the Regulations.  (R. 13.)  The ALJ determined that Plaintiff had the residual functional capacity (hereinafter "RFC") to perform sedentary work activities with no climbing of ladders, ropes, or scaffolds; no pushing/pulling with lower extremities; only occasional overhead reaching with her right arm; only occasional climbing of ramps or stairs; only occasional balancing, kneeling, stooping, crouching, or crawling; and she should avoid exposure to environmental hazards such as unprotected heights and dangerous machinery.  (R. 13.)  Based on this RFC, at step four, the ALJ determined that Plaintiff was not able to perform her past relevant work.  (R. 16.)  At step five, the ALJ

**5**

determined that Plaintiff was able to perform a significant number of jobs available in the national economy despite her impairments.  (R. 17.)  The ALJ also determined that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely credible.  (R. 15.)  As a result, the ALJ found that Plaintiff was not disabled; therefore she was not eligible for social security benefits.  (R. 17.)

## II.  Standard of Review

In reviewing an ALJ's decision, this Court does not try the case *de novo* or replace the ALJ's finding with the Court's own assessment of the evidence.  *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989).  The findings of the Commissioner of Social Security as to any fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Thus, the question before the Court is not whether a plaintiff is, in fact, disabled, but whether the evidence substantially supports the ALJ's findings.  *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).  The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether a plaintiff is disabled, the Court must affirm the ALJ's decision denying benefits.  *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996).

The Court gives considerable deference to the ALJ's credibility findings and will not overturn them unless the plaintiff can show that those findings are patently wrong.  *Urban v. Sullivan*, 799 F. Supp. 908, 911 (C.D. Ill. 1992).  However, when credibility determinations rest on objective factors or fundamental implausibilities rather than subjective considerations, reviewing courts have more freedom to review the ALJ's credibility determination.  *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994).

## III.  Analysis

Plaintiff argues that the Court should remand this case for the following reasons:  (1) the ALJ erred by finding that Plaintiff's condition did not satisfy a Listing; (2) the ALJ erred by

failing to discuss some of Plaintiff's impairments at Step Two and with regard to the RFC; (3) the ALJ improperly assessed Plaintiff's credibility; and (4) the ALJ erred at Step Five.

As an initial matter, the Court compliments the parties on their briefs.  Both were well-organized and lucid.

### A.  The ALJ's Step Three Determination

Plaintiff first argues that the ALJ erred when he found that Plaintiff's condition did not satisfy Listing 1.02(A).  The ALJ stated that the medical record contained no evidence "to suggest any restriction or gross anatomical deformity, nor is there evidence of inability to ambulate or perform motor movements that would satisfy Listing 1.02."  (R. 13.)

Listing 1.02(A) requires that the dysfunction in the joint (1) be characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability)  and chronic joint pain and stiffness, (2) involve a major peripheral weight-bearing joint, such as the hip, knee, or ankle, and (3) result in "inability to ambulate effectively."  20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.02A.  The Regulations define an inability to ambulate effectively as an extreme limitation on the ability to walk, that is, insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device that limits the functioning of both upper extremities.  20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.00B2b(1).  For example, ineffective ambulation includes, but is not limited to, the inability to walk without using a walker or two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.  20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.00B2b(2).  "The inability to ambulate effectively . . . must have lasted, or be expected to last, for at least 12 months."  20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.00B2a.

**7**

Plaintiff states that the medical record indicates deformities in both knees, including degenerative changes, a cleavage tear, large marginal osteophytic spurring, chrondromalacia patellae, and a small popliteal cyst.  Plaintiff also contends that the record contains evidence that she is unable to ambulate effectively.  She relies on Dr. Ho's September 2003 recommendation that Plaintiff unload the knees with an assistive walking device such as a CAM walker or crutches, avoid carrying, and wear shock-absorbing soled shoes.  (R. 242.)  In addition, Plaintiff refers to evidence that she was wearing a CAM walker in January 2005.  (R. 207.)

Defendant responds that the ALJ's conclusion that Plaintiff did not have a gross anatomical deformity was not clearly erroneous based on the State agency doctors' conclusion that Plaintiff did not satisfy any Listings.  (R. 19-20.)  Moreover, even if Plaintiff's knee condition constituted a gross anatomical deformity, it must also satisfy the 12-month duration requirement for inability to ambulate effectively.  Although it is undisputed that Plaintiff has some difficulty walking and she experiences some pain, as Defendant pointed out, the record does not support a conclusion that she has been, or will be, unable to ambulate effectively for 12 months; instead, it indicates that she has used assistive devices intermittently for periods lasting less than 12 months.

SSR 96-6p provides as follows:

State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act.  As members of the teams that make determinations of disability at the initial and reconsideration levels of the administrative review process (except in disability hearings), they consider the medical evidence in disability cases and make findings of fact on the medical issues, including, but not limited to, the existence and severity of an individual's impairment(s), the existence and severity of an individual's symptoms, whether the individual's impairment(s) meets or is equivalent in severity to the requirements for any impairment listed in 20 CFR part 404, subpart P, appendix 1 (the Listing of Impairments), and the individual's residual functional capacity (RFC).

**8**

SSR 96-6p.  Here, two State Agency doctors completed Disability Determination and Transmittal forms, finding that Plaintiff's condition did not meet or equal a listing.  (R. 19-20.) The Seventh Circuit court has stated that "[i]t is appropriate for an ALJ to rely on the opinions of physicians and psychologists who are also experts in social security disability evaluation." *Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004) (citing 20 C.F.R. § 416.927(f)(2)(1)).  Accordingly, the ALJ reasonably relied on the information in the Disability Determination and Transmittal forms dated January 2006 and April 2006 when he concluded that Plaintiff's condition did not meet or equal a Listing.

Plaintiff also contends that the ALJ  erred by failing to call a medical expert to determine whether Plaintiff's impairments met or equaled a Listing.  In support of this argument, Plaintiff relies on 20 C.F.R. § 416.927(f)(2)(iii), which states that an ALJ "may also ask for and consider opinions from medical experts on the nature and severity of your impairment(s) and on whether your impairment(s) equals the requirements of any impairment listed" in the Listings.  Plaintiff also relies on SSR 96-6p, which states that "[a]n updated medical expert opinion must be obtained by the administrative law judge or the Appeals Council before a decision of disability based on medical equivalence can be made."

The Regulations provide that State agency reviewing consultants are "highly qualified physicians and psychologists who are also experts in Social Security disability evaluation," and, as such, provide substantial medical opinion evidence regarding a claimant's work-related limitations.  20 C.F.R. § 404.1527(f)(2)(i).  In addition, the Seventh Circuit court has stated that Disability Determination and Transmittal forms "conclusively establish that consideration by a physician . . . designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review" and the ALJ may properly rely on these opinions.  *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).  As noted above, two State Agency doctors completed Disability Determination and Transmittal forms in January and April 2006, respectively, and they found that Plaintiff's condition did not

meet or equal a listing.  The Court concluded above that, based on this information, the ALJ reasonably found that Plaintiff's condition did not satisfy a Listing.

Section 416.927 of the Regulations provides that, "[i]f . . . we do not have sufficient evidence to decide whether [a claimant is] disabled, or, if after weighing the evidence we decide we cannot reach a conclusion about whether [a claimant is] disabled, we will try to obtain additional evidence under the provisions of §§ 416.912 and 416.919 through 416.919h." 20 C.F.R. § 416.927(b)(3).  Thus, an ALJ may call a medical expert for further information when the information already in the record is inadequate to make a determination of disability. 20 C.F.R. § 416.912(e).  Here, the record contained adequate information for the ALJ to render a decision.  Accordingly, the Court concludes that the ALJ did not err by deciding not to call a medical expert to address the issue of whether Plaintiff was disabled based on medical equivalence.  *See e.g., Skinner v. Astrue*, 478 F.3d 836, 843-44 (7th Cir. 2007).

## B.  The ALJ's Discussion of Plaintiff's Impairments

Plaintiff next argues that the ALJ erred by failing to discuss some of Plaintiff's impairments, specifically, Plaintiff's obesity and her difficulties with her heels and feet.

### 1.  Obesity

Regarding obesity, Plaintiff contends that the ALJ failed to mention obesity or follow SSR 02-1p, which states that an ALJ must consider the combined effects of obesity with other impairments in assessing RFC.  Plaintiff relies on *Barrett v. Barnhart*, in which the Seventh Circuit court stated that, "[e]ven if Barrett's arthritis was not particularly serious in itself, it would interact with her obesity to make standing for two hours at a time more painful than it would be for a person who was either as obese as she or as or as arthritic as she but not both." *Barrett v. Barnhart*, 355 F.3d  1065, 1068 (7th Cir. 2004).  The *Barrett* court noted that the ALJ treated the claimant's obesity as a factor that aggravated her arthritis, and stated that the ALJ "may have been hinting that Barrett should lose weight, that obesity is . . . essentially a self-

inflicted disability that does not entitle one to benefits or boost one's entitlement by aggravating another medical condition." *Id.*  In *Barrett*, it was undisputed that the claimant's obesity was due to hypothyroidism and was not remediable.  The court also noted that the ALJ had failed to explain his reasoning, especially his reasoning for thinking that the claimant could stand for two hours at a time in the absence of any medical evidence to support that conclusion.  The court remanded the case for further consideration based on the cumulative effect of the ALJ's errors, which included improperly giving no weight at all to a physical therapist's report as well as the ALJ's improper treatment of the claimant's obesity.

The Commissioner responds to Plaintiff's argument by pointing out that the ALJ acknowledged that Plaintiff was obese, expressly citing Dr. Patel's medical reports and diagnosis of obesity.  Furthermore, the ALJ relied on the opinions of the State agency physicians, who also recognized Plaintiff's obesity and osteoarthritis.  The Commissioner contends that the ALJ did not need to further discuss the issue of obesity.

The Court agrees.  As the Seventh Circuit court stated in *Prochaska v. Barnhart*, "[a]lthough the ALJ did not explicitly address Prochaska's obesity, he specifically predicated his decision upon the opinions of physicians who did discuss her weight." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006).  In addition, in *Skarbek v. Barnhart*, the Seventh Circuit court stated that "the ALJ adopted the limitations suggested by the specialists and reviewing doctors, who were aware of Skarbek's obesity.  Thus, although the ALJ did not explicitly consider Skarbek's obesity, it was factored indirectly into the ALJ's decision as part of the doctors' opinions." *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004).

Here, as noted above, the ALJ acknowledged that Plaintiff was obese and relied on the opinions of the State agency physicians, who also recognized Plaintiff's obesity and arthritis.  "It is appropriate for an ALJ to rely on the opinions of physicians and psychologists who are also

**11**

experts in social security disability evaluation." *Flener*, 361 F.3d at 448.  Accordingly, the Court cannot say that the ALJ erred by failing to discuss Plaintiff's obesity at length.


### 2.  Plaintiff's Heels and Feet

Plaintiff also contends that the ALJ erred by failing to consider Plaintiff's difficulties with her heels and feet.  In support, Plaintiff describes her medical records, including the following:  In August 2002, Plaintiff was treated for plantar fasciitis and plantar spurs; in September 2002, she reported improvement as a result of treatment.  In December 2004, Plaintiff experienced a sharp pain in her right ankle.  Dr. Pierce noted that Plaintiff experienced pain around the Achilles tendon and told her to decrease activity and use a CAM walker and heel lifts.  In January 2005, Plaintiff noted that the CAM walker helped.  By March 2005, Plaintiff was no longer using the walker, but she continued to use heel lifts.  In August 2005, Plaintiff began experiencing acute left foot pain and was assessed with a foot sprain.  She was given a surgical shoe and directed to decrease activity.  Plaintiff now contends that her use of assistive devices such as the CAM walker, pull-on knee sleeves, crutches, and unloader brace show that she would have difficulty moving around an office environment as "required of all sedentary jobs" (#14, p. 19), and the ALJ's failure to discuss these difficulties or to include the use of any assistive devices in determining the RFC requires remand.


The Commissioner responds that (1) the evidence Plaintiff cited in her brief covers periods prior to her alleged onset date; (2) this evidence was part of the record that the State agency doctors considered; and (3) her contention that her use of assistive devices would cause difficulty in moving around an office is speculative.  In addition, the Commissioner points out that Plaintiff used assistive devices only intermittently and for periods lasting significantly less than 12 months and the record does not support a conclusion that Plaintiff's knee and foot problems have lasted for at least 12 months.

A critical review of the evidence reveals that although the ALJ's analysis was not perfect, substantial evidence supports his conclusions and any errors were harmless.  An ALJ is not required to address every piece of evidence.  *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).  His failure to do so here is no basis for remand.  This is in line with the Seventh Circuit court's rule that minimal articulation is all that is required and cases will not be remanded merely to perfect an ALJ's decision where the outcome could be no different.  *See, e.g., Stephens v. Heckler,* 766 F.2d 284, 287 (7th Cir. 1985) (stating that "ALJs work under great burdens.  Their supervisors urge them to work quickly.  When they slow down to write better opinions, that holds up the queue and prevents deserving people from receiving benefits . . . .  When they process cases quickly, they necessarily take less time on opinions.  When a court remands a case with an order to write a better opinion, it clogs the queue in two ways--first because the new hearing on remand takes time, second because it sends the signal that ALJs should write more in each case (and thus hear fewer cases).").  Accordingly, the Court concludes that the ALJ did not err by failing to consider Plaintiff's difficulties with her heels and feet.

### 3.  Benefit of the Doubt

Finally, Plaintiff argues that the ALJ erred by restricting her to sedentary work.  Specifically, Plaintiff contends that this constituted error because it was inconsistent with the opinion of Dr. Burris, the State agency doctor, who found Plaintiff capable of performing light work.  The Court disagrees.  Here, although the ALJ did not find Plaintiff entirely credible as to the extent of her claimed limitations, he gave her the benefit of the doubt regarding her claimed difficulties with prolonged standing and limited her to sedentary work.  It seems disingenuous of Plaintiff to argue that the ALJ was improperly playing doctor when he gave her the benefit of the doubt as to her claims of inability to stand, while at the same time, Plaintiff argues that the ALJ erred by finding Plaintiff's claims less than credible.  Furthermore, as the Commissioner points out, even if the ALJ had limited Plaintiff to light work, she would still have been found not

**13**

disabled.  *Lidy v. Sullivan*, 745 F. Supp. 1411, 1416 (S.D. Ind. 1989) (stating that "cases will not be remanded merely to perfect an ALJ's decision where the outcome could be no different") (citing *Stephens,* 766 F.2d at 287).

### C.  The ALJ's Credibility Assessment

Plaintiff next argues that the ALJ made an improper credibility finding when he found her not credible based on her daily activities.  Plaintiff notes that the Seventh Circuit court has consistently held that the ability to do minimal daily activities, such as intermittent chores, is not inconsistent with disability.

The Court agrees that the ability to take care of children does not necessarily indicate an ability to perform substantial gainful activity.  *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) (stating that courts should use care in "placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home").  However, an ALJ is entitled to consider activities of daily living when assessing credibility.  *See* 20 C.F.R. § 416.929(c)(3); SSR 96-7p.  Furthermore, an ALJ is "not obliged to believe all [of a claimant's] testimony.  Applicants for disability benefits have an incentive to exaggerate their symptoms, and an administrative law judge is free to discount the applicant's testimony on the basis of the other evidence in the case."  *Johnson v. Barnhart*, 449 F.3d 804, 805 (7th Cir. 2006).

In a recent decision, the Seventh Circuit stated that, in reviewing a credibility determination, a court "merely examine[s] whether the ALJ's determination was reasoned and supported."  *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (citing *Jens v. Barnhart*, 347 F.3d 209, 213-14 (7th Cir. 2001)).  "[O]nly when the ALJ's determination lacks any explanation or support . . . [will we] declare it to be patently wrong."  *Id.* at 413-14.  Here, the ALJ explained his reasons for finding Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms not entirely credible and the Court cannot conclude that his finding was patently wrong.

### D.  The ALJ's Step Five Determination

Plaintiff next argues that the ALJ failed to satisfy his burden at Step Five because the VE's testimony conflicts with the DOT, and the ALJ erred by failing to resolve conflicts between the DOT and the VE's testimony, as required by SSR 00-4p.  In addition, Plaintiff contends that the VE's testimony does not constitute substantial evidence because the RFC was incomplete.  The Court has not found that the ALJ's RFC was incorrect, therefore it need not address the latter argument.

As an initial matter, Plaintiff contends that the ALJ failed to satisfy his obligation under SSR 00-4p because he did not expressly ask the VE whether his testimony was consistent with the *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (hereinafter "SCO"), as well as the DOT.

Regarding the ALJ's responsibility to follow up on conflicts between the VE's testimony and the DOT, SSR 00-4p provides, in pertinent part, as follows:

> When a VE or VS [(Vocational Specialist)] provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT.  In these situations, the adjudicator will:
>> Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and
>> If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SSR 00-4p.  The Seventh Circuit has addressed the ALJ's duty under SSR 00-4p as follows: "SSR 00-4p requires that an ALJ (1) ask the vocational expert if the evidence provided conflicts with the DOT . . . ."  *Coleman v. Astrue*, 269 Fed. App'x 596, 601 (7th Cir. 2008).  Plaintiff has not provided any authority supporting her theory that the ALJ must inquire separately about the SCO.  Consistent with Seventh Circuit case law, the Court concludes that the ALJ satisfied his duty to inquire under SSR 00-4p when he asked about the DOT.

**15**

Plaintiff also contends that the VE's testimony was inconsistent with the DOT and the

ALJ erred by failing to elicit an explanation for the inconsistences.  SSR 00-4p states that

"[w]hen there is an apparent unresolved conflict between VE and VS evidence and the DOT, the

adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS

evidence."  *Id.*  The Seventh Circuit quoted SSR 00-4p and set forth its interpretation of the

ruling when it stated, "[t]his ruling requires the [ALJ] to '[e]xplain [in the] determination or

decision how any conflict [with the [DOT]] that *has been identified* was resolved'."  *Donahue v.

Barnhart,* 279 F.3d 441, 446 (7th Cir. 2002) (quoting SSR 00-4p).  Thus, the ruling requires an

explanation only if the discrepancy was "identified"--that is, if the claimant, or the ALJ on his

behalf, noticed the conflict and asked for substantiation.  *Id.* at 446-47.

In this case, after the discussion of hypothetical questions, described in detail above, the

ALJ asked the VE, "is your testimony this morning consistent with the DOT?"  (R. 314.)  The

VE replied, "[y]es, it is."  (R. 314.)  The ALJ then asked Plaintiff's attorney if he had any

questions, and the attorney answered, "[n]o questions."  (R. 314.)

Without question, no one identified any discrepancy between the VE's testimony and the

DOT at the hearing.  As a result, Plaintiff cannot now argue that the VE testimony conflicts with

the DOT.  Therefore, notwithstanding Plaintiff's assertions in her brief and examples of conflicts

between the VE testimony and the DOT, the ALJ appropriately relied on the VE's testimony.

While one can sympathize with the difficulties a claimant may experience in finding

satisfactory work that accommodates her limitations, the Commissioner is permitted to grant

benefits only to those who are incapable of engaging in any substantial gainful activity by reason

of a medically determinable physical or mental impairment.  42 U.S.C. § 423(d); *see Jones v.

Shalala*, 10 F.3d 522, 526 (7th Cir. 1993).  If jobs exist which a claimant could perform, she will

not be entitled to disability benefits, regardless of the availability of those particular jobs in a

particular area.  *See* 42 U.S.C. § 423(d)(2)(A).  Difficulties in sustaining gainful employment

**16**

may arise from prevailing economic conditions, and that problem cannot be addressed through the provisions of the Social Security Act.  Congress created a scheme for granting disability benefits to specified individuals and those who do not have a disability, as defined by Congress, cannot qualify for disability benefits.  *Jones*, 10 F.3d at 526.


### IV.  Summary

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment or Remand **(#12)** be **DENIED**.  The parties are advised that any objection to this recommendation must be filed in writing with the Clerk within ten (10) working days after service of a copy of this recommendation.  *See* 28 U.S.C. 636(b)(1).  Failure to object will constitute a waiver of objections on appeal.  *Video Views, Inc. v. Studio 21, Ltd.,* 797 F.2d 538, 539 (7th Cir. 1986).

ENTER this 7th day of November, 2008.


                              s/ DAVID G. BERNTHAL
                              U.S. MAGISTRATE JUDGE